## Staunton.

HOT SPRINGS LUMBER AND MANUFACTURING CO. v. REVER-
COMB.

September 21, 1909.

1. LOGS AND LOGGING—*Floatable Stream—Case at Bar.*—In order to
   constitute a stream a public highway it must be of such a char-
   acter as·that it can be substantially useful to the public in trans-
   porting the products of the field and forest. A stream that is so
   narrow and rapid, and rises and falls so suddenly and unexpec-
   tedly that it cannot be made of substantial, practical use for
   floating logs is not a floatable stream, and, if the facts stated
   in the declaration in the case at bar be proved, then the stream
   mentioned therein is not a public highway, and the demurrer to
   the declaration was properly overruled.

2. PLEADING—*Declaration Good in Part—Presumption as to Proof.*—
   Where a declaration is good as to a part of the cause of action
   therein stated, the presumption is that the trial court confined
   the proof upon it within proper bounds.

3. APPEAL—*Grounds of Demurrer—New Grounds.*—A defendant is
   bound by the grounds of demurrer assigned in the trial court,
   and cannot present new grounds for the first time in the appel-
   late court.

4. WITNESSES—*Experts—Decision of Trial Court—Case at Bar.*—
   Whether or not a witness is an expert is a question for the trial
   court, subject to review on appeal under the limitations appli-
   cable to the review of the exercise of discretion. In the case at
   bar, the trial court was satisfied with the qualifications of the
   witness, and this court is unable to say, as a matter of law, that
   its discretion was improperly exercised.

5. WITNESSES—*Experts—Opinions—Floatable Streams.*—A witness who
   has made the floating of logs a part of the business of his life,
   and who possesses an intimate acquaintance with the stream with
   reference to which he testifies, and a thorough knowledge of the
   uses to which it is sought to be applied, may give his opinion
   as to whether or not the stream is floatable. Such opinion would
   be of distinct value to the jury in arriving at a correct conclu-
   sion, and in no other way could he convey to the minds of a jury

of ordinary experience and average intelligence a correct and intelligent appreciation of the stream.    For an elaborate discussion of opinion evidence, see opinion of the court.

6. BILLS OF EXCEPTION—*When Unnecessary.*—Where the want of power in a court to enter an order appears on the face of the record no bill of exception is necessary.

7. BILLS OF EXCEPTION—*Signing—Agreement of Counsel—Motion for New Trial.*—Pending a motion for a new trial of an action at law, and while the same is undecided, the whole matter is within the breast of the court, with full power to sign such bills of exception and enter such judgment as may be proper, regardless of the agreement of the parties that bills of exception may be filed within sixty days after verdict.

8. BILLS OF EXCEPTION—*Certifying Evidence—Failure to Identify—Nunc Pro Tunc Order.*—The evidence inserted in a bill of exception by reference must, in some way, be identified or earmarked by the judge under his own hand, otherwise it is no part of the bill and cannot be considered by an appellate court.  If not so identified, within the time prescribed by law for taking the bill, it cannot be so identified afterwards by a *nunc pro tunc* order. The identification of the evidence to be inserted in a bill of exception is a judicial act to be performed by the judge himself within the time prescribed for filing the bill, and cannot be delegated to the clerk.  A skeleton bill containing such expressions as "here insert the evidence," without earmarking the evidence to be inserted, is not a compliance with the law.

Error to a judgment of the Circuit Court of Bath county in an action of trespass on the case.    Judgment for the plaintiff.    Defendant assigns error.

*Affirmed.*

The following is a copy of the first, second and fifth counts of the amended declaration filed May 25, 1907:

Virginia: Bath County, to-wit:

"In the Circuit Court of said county:

"H. A. Revercomb complains of the Hot Springs Lumber and Manufacturing Company, Incorporated, and the Jackson and Cowpasture Boom Company, Incorporated, defendants, of a plea of trespass on the case for this, to-wit:    That at and

before the time of the grievances hereinafter complained of, and at this time, the plaintiff was, has been, and is now the owner in fee simple and in possession of a farm situated in Bath county, on Jackson river, which said farm is worth a large sum, to-wit: the sum of $12,000.00 and that he is the owner of the land on both sides of the said river and the bed of said river where it passes through his said land; and the plaintiff avers that the said stream known as Jackson river flows through a steep, rugged, mountainous country for a great portion of its length, and said stream is a narrow, swift-running, fresh water mountain stream; that it is very crooked, and the banks in many places are very low where it passes through the plaintiff's lands, and at other places; and the plaintiff avers that trees and underbrush grow along the banks of said stream in some places, and in many places small islands and sand bars have formed and are now in the channel of said stream, and large bowlders of rock have been formed and are now in the channel of said stream at many places; and the plaintiff avers that the said stream is not a floatable stream, and is not a navigable stream; and the plaintiff avers that the said stream cannot be used by the public as a means of floating logs or timber, or other products of forests or fields to mill or to market, profitably or practicably, for the reason that said stream will not, in its normal condition, wash logs down its channel but will only wash logs down its channel when the water in said stream is increased so as to make it deep and swift enough for that purpose; and the plaintiff avers that when the increased precipitation of water in said stream occurs and makes said stream deep and swift enough to wash logs down the channel thereof, it cannot be used profitably or practicably for the purpose of washing logs down the channel of the same to mills or market, for the reason that the water in said stream, by reason of its being a rough, crooked, swift-running stream, runs with such force and so rapidly, and runs over the banks of the river along the said stream, that it piles the logs along the

banks and in the channel of said stream, and carries logs frequently a great distance from said stream out into sluices, and into the fields and as often as the logs are put back in said stream the swift current throws the said logs out onto the banks, or piles them up in inaccessible places, and the water rushes on down the current of said stream and leaves the said logs strewn along the banks of the stream, or piled in the channel thereof, and it is impossible to keep said logs in said stream so they can be floated down same, and after the water passes on down said stream and leaves said logs as aforesaid, there is not sufficient water to wash the logs down the channel of said stream; and the plaintiff avers that when said stream becomes sufficiently high to wash logs down the channel thereof that it runs away so quickly that it leaves the logs strewn along the banks and in the channel thereof; and the plaintiff avers that the said stream will not rise to and remain at such height as will enable logs or other products of the fields or forests to be profitably or practicably floated down said stream to mills or market; and the plaintiff avers that the said stream, by reason of its condition, as aforesaid, cannot be used by the public as a public highway for the purposes of transporting the products of the fields or forest to mills or market with profit or success; and the plaintiff avers that the said stream will not float logs as hereinbefore stated in its normal condition, and the times when said stream, by increased precipitation of water will wash logs down the channel thereof, come so unexpectedly and with such irregularity, and is so uncertain as to when the volume of water in said stream will be sufficient to wash the logs down the same, and it is so uncertain when said stream will rise to and remain at such height as to enable logs to be washed down the channel thereof, that the public cannot calculate with tolerable or reasonable certainty as to the times or seasons the water in said stream will rise to and remain at such height as to enable it to profitably or practicably use said stream as a means of transporting logs or other products of the

forest or fields to mill or market, by floating them in said stream; and the plaintiff avers that the said stream, for the reasons aforesaid, cannot be used by the public for the transportation of logs or timber or other products of the fields or forest to mills or market; and the plaintiff avers that by reason thereof the said stream is not a public stream, or a public highway, but, for the reason aforesaid, the said stream is a private stream, and that the defendants had no right to attempt to use said stream, as hereinafter stated, as a public highway, by attempting to float logs in the same; and the plaintiff avers that the defendants knew the character and condition of said stream as above set forth, and they knew that the said stream was not a floatable stream, or a navigable stream, and they knew that the said stream was not a public stream, or a public highway, and they knew that the same was a private stream; and the plaintiff avers that the defendants, with full knowledge of the condition and character of said stream, as above set forth, went above the lands of the plaintiff on said stream, and wrongfully and illegally cut and put into said stream a great number of saw logs, and purchased from other persons saw-logs which had been wrongfully and illegally placed in said stream above the lands of the plaintiff, for the purpose of having the logs purchased by them, as aforesaid, and those cut and placed in said stream, as aforesaid, washed down the said stream through the lands of the plaintiff to the saw mill of the defendant, The Hot Springs Lumber and Manufacturing Company, Incorporated; and the plaintiff avers that after the said logs were placed in said stream by the defendants, as aforesaid, and after they had purchased logs from others, which had been placed in said stream, as aforesaid, to-wit: on the — day of —, 1904, and on the — day of —, 1905, the volume of water in said stream was increased and made sufficiently deep to wash the logs of the defendants placed in said stream, as aforesaid, and those purchased by the defendants from other persons, as aforesaid, down said stream by the water onto the lands of the plain-

tiff; and the plaintiff avers that the said logs thus washed down the said stream, were piled up by the water in heaps and jams, in the channel of said stream along the plaintiff's land, and along the banks of his land, which caused the water in said stream to be run out of its natural channel onto the lands of the plaintiff, and the logs of the defendants which came down said stream after the formation of said jam and the water in said stream were driven and thrown onto the plaintiff's land, and a great portion of the plaintiff's land was thereby washed away and destroyed, and a great portion of the residue injured and damaged, and the natural bank of the said stream along his said land were thereby washed away and destroyed, which caused the land of the plaintiff along said stream to fall into said stream and be washed away; and the plaintiff avers that by reason thereof his land has been greatly injured, and a great portion thereof has been cut and washed away and totally destroyed; and the plaintiff avers that before his said land was cut and washed as aforesaid, that there were natural banks along said stream which were not affected by the water or other things floating therein, but the plaintiff avers that since his land has been cut and washed away and damaged as aforesaid, which was caused by the logs of the defendant, as aforesaid, that his said lands along the said stream have been left in an exposed and washed condition, so that the water of said stream, or logs or other things washing therein, now continually washes and cuts away his lands along said stream, and the damage to his lands is a continuing damage to the plaintiff's land, and his land, by reason of being left in the exposed and washed condition, as aforesaid, is now being continually destroyed by the water in said stream, and that in order to prevent the continuing damage and total destruction of the plaintiff's land, the plaintiff will be obliged to build expensive walls or abutments along the banks of said stream where it passes through his land in order to prevent and protect his lands from total destruction by the water in said stream, which said walls or abutments will cost the plaintiff a large

sum, to-wit: At least the sum of $1,700.00. And the plaintiff avers that the necessity imposed on him to build said walls or abutments in order to protect his said lands from total destruction, at the said cost of $1,700.00 as aforesaid was caused by the defendants wrongfully and illegally putting said logs into said stream and wrongfully and illegally attempting to have said logs washed or floated down said stream through the lands of the plaintiff as aforesaid, and permitting the said logs to be piled in heaps and jams in the channel of said stream along the plaintiff's land, and permitting the said logs to be washed onto, against and upon the plaintiff's land along said stream, thereby damaging, injuring and destroying the same, as aforesaid, to the damage of the plaintiff, $2,000.00."

## "*Second Count.*

"And for this, also, to-wit: That before and at the time of the greivances hereinafter complained of, and at this time, the plaintiff, H. A. Revercomb, was, has been and is now the owner in fee simple and in possession of a farm consisting of several hundred acres of land situated in Bath county, on Jackson river, which said farm is worth a large sum, to-wit, the sum of $12,000.00; that he is the owner of the said land on both sides of the said river, and is the owner of the bed of said river where it passes through his said land; and the plaintiff avers that the said stream, known as Jackson river, flows for some distance, through a steep, rugged, mountainous country; and the plaintiff avers that the said stream is a narrow, swift-running, fresh water mountain stream; that it is very crooked and the banks in many places are very low; and the plaintiff avers that trees and underbrush grow long the banks of said stream in many places, and in some places small islands and sand bars have formed and are now in the channel of said stream, and that in some places large bowlders of rock have been formed and are now in the channel of said stream; and the plaintiff avers that said stream is not

a floatable stream, and that it is not a navigable stream; and the plaintiff avers that the said stream cannot be used by the public profitably and practicably for the purpose of floating to mill or market logs or other products of the forest or fields, for the reason that the said stream will not, in its normal condition, wash logs down its channel, but will only wash logs down its channel when the water in said stream is increased so as to make it deep and swift enough for that purpose; and the plaintiff avers that when the increased precipitation of water in said stream makes it deep and swift enough to wash logs down the channel thereof it cannot be used profitably or practicably by the public for the purpose of floating logs down the channel of the same to mill or market, for the reason that the water in said stream by reason of its being a rough, crooked, swift-running stream, runs with such force and so rapidly that it piles the logs along the banks and in the channel of said stream, and carries the logs frequently a great distance from the said stream out into sluices, and into the fields, and as often as the logs are put back into the said stream the swift current throws said logs out on the banks or piles them up in inaccessible places, and the water, by reason of its running so very swiftly, passes on and leaves the logs strewn along the banks of the stream, or piled in the channel thereof, and after the water passes on and leaves the logs, as aforesaid, in said stream and along the banks thereof there is not sufficient water to wash the said logs down the channel of said stream; and the plaintiff avers that the seasons or times when said stream, by the increased precipitation of water, will wash logs down the channel thereof comes so unexpectedly and with such irregularity, and it is so uncertain as to when the volume of water in said stream will be sufficient to wash logs down the channel thereof, that the public cannot calculate with reasonable or tolerable certainty as to the times or seasons when said stream will rise to and remain at such height as to enable it to make profitable or practicable use of said stream as a means for transporting logs or other products to mill

or market by floating them in said stream; and the plaintiff avers that the said stream, for the reasons aforesaid is not a floatable stream and is not a navigable stream; and the plaintiff avers that the said stream is not such a stream as can be made substantial use of by the public for the purpose of transporting logs or timber or other products of the forest or fields to mill or market; and the plaintiff avers that the said stream is a private stream, and that the defendants had no right to attempt to use said stream as a public highway by attempting to float logs in the same; and the plaintiff avers that the defendants knew the character and condition of said stream, as above set forth, and knew that the said stream was not a floatable stream, or a navigable stream; and the defendants well knew that the said stream was a private stream; and the plaintiff avers that the said defendants, with the full knowledge of the character and condition of said stream and of the facts as hereinabove set forth, went upon the said stream above the lands of the plaintiff and illegally and wrongfully cut and put into said stream a great number of saw-logs, and purchased logs from other persons who had illegally and wrongfully placed the same in said stream for the purpose of having said logs so cut and piled into said stream as aforesaid, and those purchased from others which had been placed in said stream as aforesaid, washed or floated down the channel of said stream to the sawmill of the defendant, the Hot Springs Lumber and Manufacturing Company, Incorporated, which is situated below the lands of the plaintiff; and the plaintiff avers that when the said logs were put into the said stream, as aforesaid, by the defendants for the purpose of having them washed down the said stream, the volume of water in said stream was increased and the said logs were washed down said stream on the — day of —, 1904, and on the — day of —, 1905, and piled up in heaps and jams by the water in the channel of the stream and along the banks thereof where said stream passes through the lands of the plaintiff; and the plaintiff avers that the logs, by reason of being piled in heaps

and jams as aforesaid turned the water from its natural course, where it was accustomed to flow and caused the water and the logs running in the same to run against and strike and cut away, injure and destroy the plaintiff's land; and the plaintiff avers that it became and was the duty of the defendants to follow the said logs down said stream after they were put in said stream and permitted to wash down the same as aforesaid, with reasonable promptness and dispatch, with men who were capable and sufficient to remove the said heaps and jams, which had formed in said stream along the bank thereof as aforesaid with reasonable promptness and dispatch and to use ordinary care to prevent said logs from injuring the plaintiff's land. But not regarding their duty in this particular the said defendants carelessly and negligently failed to follow the said logs down the said stream after they were put in the same with reasonable promptness and dispatch and failed to break up and remove the heaps and jams of logs formed in said stream as aforesaid along the lands of the plaintiff with reasonable promptness and dispatch, and the said heaps and jams of logs formed as aforesaid in said stream and along the bank thereof through the lands of the plaintiff were carelessly and negligently permitted by the defendants to remain in the position in which the said logs had been thrown by the water in heaps and jams as aforesaid, for an unreasonable length of time, to-wit: for a great number of days and nights; and the plaintiff avers that the heaps and jams of logs aforesaid which were thus carelessly and negligently permitted to remain in the channel of the said stream and along the banks thereof along the lands of the plaintiff as aforesaid caused the water in said stream to be turned from its natural channel where it was accustomed to run and caused the water in said stream and the logs placed therein by the defendants as aforesaid, as they washed down to said heaps and jams to be thrown or washed against the lands of the plaintiff, and the said logs and water thus thrown against the plaintiff's land cut away, destroyed and washed away

a great portion of the lands of the plaintiff and greatly damaged and injured a great portion of the residue of his said land; and the plaintiff avers that before his lands were injured by the defendant's logs as aforesaid that the banks of the river along his said lands had formed natural banks which were not affected by the water or other things, but the plaintiff avers that since his said land has been cut away and destroyed as aforesaid, which was caused by the logs of the defendants as aforesaid that his lands along the banks of said stream have been left in a wasted and exposed condition so that the water in said stream now continually washes away and destroys the plaintiff's land; and the plaintiff avers that the damage to his land was caused by the careless and negligent manner of the defendants in attempting to float logs in said stream in this, that the defendants carelessly and negligently failed to follow up said logs and remove the jam in said stream and on the banks of the plaintiff's land where said stream passes through the same with reasonable promptness and dispatch, and was caused by the said defendants carelessly and negligently causing the said logs and jams to remain in heaps and jams for an unreasonable length of time, as aforesaid, which caused the water in said streams to injure the plaintiff's lands as aforesaid; and the plaintiff avers the damage to his lands as aforesaid caused by the said logs of the defendant as aforesaid is a continuing damage and that his said lands are being continually washed away and destroyed and that in order to protect his land from total destruction it will be necessary for him to build walls or abutments along the banks of said stream where it passes through his lands, which said walls or abutments will cost the plaintiff a large sum of money, to-wit: The sum of $1,700.00. And the plaintiff avers that the necessity imposed on him to build said walls or abutments to protect and prevent his said land from total destruction at the said cost of $1,700.00 was caused by the defendants wrongfully and illegally putting said logs and timber into said

stream as aforesaid and attempting to float the same down the said stream and by reason of the said careless and negligent manner of the defendants in attempting to float said logs in said stream through the lands of the plaintiff in not following up said logs in said stream and removing the said jams or heaps with reasonable promptness and dispatch after the said logs were formed into heaps and jams as aforesaid, to the damage of the plaintiff, $2,000.00."

### *"Fifth Count.*

"And for this, also, to-wit: That heretofore, to-wit: at and before the time of the grievances hereinafter complained of, and up to the present time, the plaintiff H. A. Revercomb, was, has been and is now, the owner, in fee simple, and in possession of a farm of several hundred acres of land situated in Bath county, on Jackson river; that he owns the said land through which the said river flows, including the bed and banks of said stream; and that the defendants went above the lands of the plaintiff on said stream and cut and illegally and wrongfully put into said stream above the plaintiff's said land a great many saw-logs, and logs of different kinds and purchased from other persons who had wrongfully and illegally put logs into said stream, a great number of logs for the purpose of wrongfully and illegally floating the said logs down said river to the sawmill of the defendants, which sawmill is situated on said stream below the land of the plaintiff.

"And the plaintiff avers that the said stream is not a navigable stream, and is not a floatable stream; that it is a crooked, swift-running, fresh water stream; that the banks of the same are very low; and plaintiff avers that it is a private stream; and the plaintiff avers that the defendant knew this when he put said logs into said stream, and when he purchased the logs from other persons, which had been put into said stream for the purpose of having them washed down said stream, as aforesaid; and the plaintiff avers that on the — day of —, 1904, and on

---

---

the — day of —, 1905, the water in said stream became deep
and swift enough to wash the said logs from where they had
been put in said stream down onto the lands of the plaintiff;
and the plaintiff avers that the said logs thus put into said
stream by the defendant, and those purchased by them from
other persons, as aforesaid, were washed down said stream
onto the lands of the plaintiff and into his enclosed lands. And
the said plaintiff avers that the said defendant, against the will
of the plaintiff and against his protest and consent, broke and
entered the plaintiff's close and took their teams and wagons
and a great number of men whom they employed, onto the
plaintiff's land and hauled, dragged and carried said logs
which had been washed thereon, as aforesaid, over through
the lands of the plaintiff and placed said logs in said stream
for the purpose of having the same washed down said river; and
the plaintiff avers that when said logs were placed in said
stream, as aforesaid, that they continued to wash out onto the
plaintiff's land as they passed through the same in said stream,
and as often as they did so, the defendant with their teams
and men broke and entered upon the plaintiff's land and hauled
and carried said logs back into said river; and the plaintiff
avers that in putting said logs into said stream from the lands
of the plaintiff, as aforesaid, the defendant with their horses
and a great number of men travelled over plaintiff's land and
tramped down his grass and cut up and injured his land with
horses and men by dragging said logs over the same; and the
plaintiff alleges that the defendant trespassed on his land, as
aforesaid, wilfully, wantonly, and against the will of the plain-
tiff, and tore down and destroyed, and wrongfully and illegally
left open his fences against his protest, and to his great injury,
and other wrongs to the said plaintiff the said defendant then
and there did to the damage of the said plaintiff $2,000.00,
and therefore he brings his suit."

JOHN W. STEPHENSON,
    GEO. A. REVERCOMB, p. q.

Bill of exception No. 2 which was intended to certify the evidence, was a mere skeleton bill, and did not incorporate the evidence.   So far as it relates to the evidence, it was as follows: "Be it remembered that after the jury was sworn to try the issue joined in this cause, the plaintiff to prove and maintain the said issue on his part introduced the following evidence:

"(Here insert the evidence in chief introduced on his behalf.)

"And the defendant the Hot Springs Lumber and Manufacturing Company, Incorporated, to maintain the issue on its part introduced the following testimony.

"(Here insert the evidence in chief for the defendant.)

"And the plaintiff in rebuttal introduced the following testimony:

"(Here insert the testimony introduced by the plaintiff in rebuttal.)

"And the said defendant in surrebuttal introduced the following evidence:

"(Here insert the evidence introduced by the defendant in surrebuttal.)

"Which was all the evidence introduced."

This bill was signed in January, 1908.   In July, 1908, the defendant sought to have this bill amended by an order entered *nunc pro tunc*.   The proceedings had at that time sufficiently appear from a bill of exception taken by the plaintiff to the action of the court in making said order, which bill is as follows:

*"Plaintiff's Bill of Exception No. 1.*

"Be it remembered that on the 20th day of July, 1908, that being the first day of the July term, 1908, of the Circuit Court of Bath county, Virginia, the defendant, Hot Springs Lumber and Manufacturing Company, Incorporated, moved the said court to enter in this cause an order *nunc pro tunc* certifying as all of the evidence and as the true evidence introduced upon

the trial of this cause at the November term, 1907, of said court, the contents of a certain stenographic report purporting to be all the evidence and the true evidence which was introduced upon the trial of this cause at the said November term, 1907, and embracing the same more clearly and distinctly in the bill of exceptions No. 2, taken by the said defendant, in which said bill of exceptions it was intended to embrace as the evidence and all the evidence introduced upon the trial of this cause at the November term, 1907, of this court, the contents of the stenographic report aforesaid, which said bill of exceptions No. 2 was, upon January 24, 1908, signed by the judge of this court in vacation and made a part of the record in this cause.   The said motion was based upon a notice, a copy of which was served upon the plaintiff at the instance of the defendant, which notice was and is in the words and figures following, to-wit:

"To H. A. Revercomb:

"On the 24th day of January, 1908, in the cause of yourself, plaintiff, against Hot Springs Lumber and Manufacturing Co., Incorporated, etc., defendant, then and now pending in the Circuit Court for the county of Bath, Virginia, certain bills of exception were signed, sealed and made a part of the record by the judge of said court, which will appear from the papers in said suit on file in the clerk's office of said court here referred to.

"Among said exceptions so filed was one embracing or intending to embrace the evidence and all the evidence which was produced before the court and the jury in the trial of said cause at the November term of said court, 1907, on which said court rendered judgment in your favor at its March term, 1908.

"Said bill of exceptions shows the introduction of said evidence, the ruling of the court thereon, and the exceptions of the undersigned duly noted; but did not in express terms have the evidence copied into it at length, but directed the clerk of

said court to copy into said exceptions all the evidence introduced at the trial to the court and jury.

"And the undersigned desires to have an order entered at length in said bill of exceptions, the true evidence referred to by the court therein. This is to notify you, therefore, that on the first day of the next term of the Circuit Court of Bath county, Virginia, that day being the 20th day of July, 1908, the undersigned shall move said Circuit —— of Bath county to enter an order *nunc pro tunc* in said cause certifying the true evidence introduced in said cause, and embracing the same more clearly and distinctly in the bill of exceptions above referred to, which was duly made a part of the record in said cause as above stated.

"Respectfully,<br>
"HOT SPRINGS LUMBER AND MANUFACTURING<br>
COMPANY, INCORPORATED,<br>
"By Counsel.

"McAllister & Nelson,
"Harmon & Walsh, p. q.

"The plaintiff appeared at the time stated in said notice and demurred thereto, in which demurrer the defendant, Hot Springs Lumber and Manufacturing Company, Incorporated, joined and upon which demurrer the court entered judgment in favor of said defendant. The plaintiff thereupon moved the court to quash said notice, but the court after hearing argument of counsel upon said motion to quash denied said motion and refused to quash said notice.

"Thereupon, said defendant in support of the motion referred to in the notice aforesaid introduced as witnesses on its behalf J. T. McAllister and F. L. LaRue.

"The said McAllister, one of the witnesses called in behalf of the defendant, Hot Springs Lumber and Manufacturing Company, testified that he was one of counsel for defendant in the trial of this cause at the November term, 1907, of this court;

that he is now and has at all times since said trial been of counsel for defendant in this cause; that during the trial of this cause at the November term, 1907, a stenographer's report was made at his instance of the evidence introduced at said trial; that on January 24, 1908, in vacation of this court, he on behalf of said defendant, Hot Springs Lumber and Manufacturing Company, presented to the judge of this court for signature by him certain bills of exceptions in this cause, among others, bill of exceptions No. 2; that at the time of presenting said bills of exceptions to said judge of this court in vacation, witness also presented to him a transcript made by the stenographer who had reported the evidence taken in this cause at the November term, 1907, said transcript having been made from the shorthand notes taken by said stenographer during the trial of this cause at the November term, 1907, and which said transcript witness states purported to contain all of the evidence introduced upon the trial of this cause at the said November term, 1907; that said transcript was by the said witness presented to the said judge of this court in vacation on January 24, 1908, together with the bills of exceptions which were signed by the judge of this court on said date and made a part of the record in this cause; that certain of said bills of exceptions, other than said bill of exception No. 2, contained and set out certain evidence adduced on the trial of this cause at the said November term, 1907; that the said judge of this court, in ascertaining and identifying the evidence set out in said bills of exceptions other than bill of exception No. 2, inspected the portions of the stenographic transcript aforesaid purporting to contain and set out the evidence referred to in said bills of exceptions other than bill of exception No. 2; that not until the said 24th day of January, 1908, had the stenographic transcript aforesaid purporting to contain all the evidence introduced at the trial of this cause at the November term, 1907, been presented to the judge of this court, and that the said judge had not, so far as the witness knew, seen or read the

same; that the said transcript from the time it was written by the stenographer from his shorthand notes up to the time it was presented to the judge of this court with the aforesaid bills of exceptions, to-wit: on January 24, 1908, was not in possession of the judge of the court; that before the judge of this court signed said bill of exception No. 2 he did not, so far as the witness knows, read all of said evidence; that the said judge of this court on the 24th day of January, 1908, neither at or before the signing the said bill of exceptions labeled said stenographic transcript aforesaid as the true evidence in the case, but having the same before him, examined the testimony of various witnesses as therein set forth and in the bills of exceptions Nos. A, B, C, D, E, F, G, H (I, J, K, L,) and M, also signed by the judge of this court on the said 24th of January, 1908, which bills of exceptions the said witness produced and offered in evidence, which several bills of exceptions referred to the stenographer's report of evidence by both the name of the witness, the page on which the testimony appears and ends, and also directions in said bills of exceptions to the clerk to copy additional evidence or other parts of the stenographer's report, in which directions reference is made by page and otherwise to said stenographer's report. That the said stenographer had made two complete copies of the said transcript, and that upon the said 24th day of January, 1908, after all the bills of exceptions signed on that date by the judge of this court had been signed by him, witness delivered one of said copies to counsel for plaintiff, by whom it was, after the expiration of about two weeks or more, returned to witness. The defendant also introduced in evidence the said stenographer's transcript aforesaid, which contains in the judge's own handwriting certain changes in said stenographer's transcript, but said changes made by said judge were made by him after said bills of exceptions were signed on the 24th day of January, 1908, but before said final judgment was entered.

"F. L. LaRue, another witness introduced on behalf of the

defendant, Hot Springs Lumber and Manufacturing Company, Incorporated, testified that he is clerk of the Circuit Court of Bath county, Virginia; that at the March term, 1908, of said court, a final judgment was entered by the said court in this cause; and that at said term of said court the stenographer's transcript referred to by witness, J. T. McAllister, was together with said bill of exceptions No. 2 and the other bills of exceptions signed on the 24th day of January, 1908, and the other papers in this cause handed to witness by the judge of said court all tied up in one package.

"The foregoing was all the evidence introduced in support of the motion aforesaid for the entrance of the *nunc pro tunc* order aforesaid.

"Whereupon the court, after hearing said evidence and argument of counsel, entered, over the objection of the plaintiff in this cause, H. A. Revercomb, the following order, to-wit:

"Virginia,

"In the Circuit Court of Bath County—

"H. A. Revercomb

v.

"Hot Springs Lumber and Manufacturing Company, Incorporated, etc.

"This day came the parties, plaintiff and defendant, and after due notice to the plaintiff, the defendant, Hot Springs Lumber and Manufacturing Company, Incorporated, moved this court to enter an order *nunc pro tunc,* earmarking and identifying the evidence produced before the court and jury at the trial of this case at the November term, 1907, of this court, and referred to by the court in bill of exceptions No. 2 in this cause, which said bill was signed and sealed by this court on the 24th day of January, 1908, and which was intended to be embraced in said bill, which said notice is marked Exhibit B, H. A. R. case, and filed in the papers in this cause. To this notice the plaintiff demurred generally, and the court overruled

the demurrer. And the court having inspected ·the stenographer's report of the evidence tendered with said motion, which said evidence is in two parts, beginning with the evidence of H. A. Revercomb, the plaintiff, on page one, and ending with the recross-examination of W. T. Kelley on page 199 of part one and beginning with the evidence of G. A. McAllister on page 200 of book or part No. 2 and ending with the conclusion of the testimony of E. G. Helmintoller, at the conclusion of book or part No. 2 of said evidence on page 383, both of which parts have the following endorsements thereon, which endorsement was placed thereon on the 20th day of July, 1908: 'This is the evidence referred to in bill of exceptions No. 2 in the case of H. A. Revercomb, plaintiff, v. Hot Springs Lumber and Manufacturing Company, Incorporated, etc., at the November term of this court, 1907, Exhibit No. A, July 20, 1908, and signed Geo. K. Anderson, Judge, and the several bills of exceptions signed, sealed and made a part of the record, and the reference therein to said evidence so marked as aforesaid by reference to said evidence by pages and otherwise, it is hereby certified at this, the July term, 1908, of the Circuit Court of Bath county, now for then, that the said evidence earmarked by this court and signed by it in the manner in the order above set forth, is the evidence and all the evidence which was adduced at the trial of this cause at the November term, 1907, of this court and is the same evidence referred to in bill of exceptions No. 2 signed by the judge of this court on the 24th day of January, 1908, which said evidence was in the hands of the court and was approved by said judge as the true evidence in this cause at the date when said bill was so signed, and the evidence so marked as aforesaid is the evidence the clerk was directed to copy into said bill of exceptions No. 2.'

"To the entering of which said *nunc pro tunc* order in this cause on the 20th day of July, 1908, the plaintiff then and there by counsel excepted and has this 19th day of August, 1908, within thirty days after the end of the July term, 1908, of the

Circuit Court of Bath county, Virginia, tendered to the judge of said court in vacation this, his bill of exceptions, to the ruling of said court, in entering the said *nunc pro tunc* order, and he prays that this, his bill of exceptions, may be signed, sealed, enrolled and made a part of the record in this cause, which is accordingly done this 19th day of August, 1908.

"GEO. K. ANDERSON   [Seal.]"

*J. T. McAllister* and *Harmon & Walsh,* for the plaintiff in error.

*John W. Stephenson, John T. DeLaney, H. H. Bird* and *George A. Revercomb,* for the defendant in error.

Keith, P., delivered the opinion of the court.

This case was before us upon a former occasion, and is reported in 106 Va. 176, 55 S. E. 580, 9 L. R. A. (N. S.) 894. The question there discussed was as to what constitutes a floatable stream, and after a careful examination of the authorities it was held that "While a stream may not be floatable in its usual and continuous condition, it is a floatable stream, and as such, subject to public use, if by increased precipitation at seasons, recurring periodically with reasonable certainty, the flow of water is sufficient to be substantially useful to the public for the transportation of the products of their fields and forests."

The contention of the plaintiff in the court below was that Jackson river, the stream in question, was not a floatable stream; but we held that, upon the facts stated in the declaration, it was a floatable stream. The right of the plaintiff to recover being dependent upon his maintaining that the river in question was not a floatable stream, the demurrer to the declaration was sustained, and the cause remanded with leave to amend. That was done, a demurrer was again interposed, was overruled by the circuit court, the case tried before a jury, and

a verdict rendered against the defendant for $1,650; and the case is before us for review upon a writ of error awarded by one of the judges of this court.

The declaration, as amended, consisted of five counts. The court struck out the third and fourth counts, and the first assignment of error is to the overruling of the demurrer to the first, second and fifth counts.

The first count, omitting its formal parts, avers that the said stream cannot be used by the public as a means of floating logs and timber profitably or practicably, for the reason that said stream will not, in its normal condition, wash logs down its channel, but will only wash logs down its channel when the water in said stream is increased so as to make it deep and swift enough for that purpose; and the plaintiff avers that when the increased precipitation of water in said stream occurs and makes said stream deep and swift enough to wash logs down the channel thereof, it cannot be used profitably or practicably for the purpose of washing logs down the channel of the same to mills or market, for the reason that the water in said stream, by reason of its being a rough, crooked, swift-running stream, runs with such force and so rapidly, and runs over the banks of the river along the said stream, that it piles the logs along the banks and in the channel of said stream, and carries logs frequently a great distance from said stream out into sluices and into the fields, and as often as the logs are put back in the said stream the swift current throws the said logs out onto the banks, or piles them up in inaccessible places, and the water rushes on down the current of said stream and leaves the said logs strewn along the banks of the stream, or piled in the channel thereof, and it is impossible to keep said logs in said stream so they can be floated down same, and after the water passes on down said stream and leaves said logs as aforesaid, there is not sufficient water to wash the logs down the channel of said stream; and that when said stream becomes sufficiently high to wash logs down the channel thereof;

it runs away so quickly that it leaves the logs strewn along the banks and in the channel thereof, and the stream will not rise to and remain at such height as will enable logs to be profitably or practically floated down to market. And the plaintiff avers that the said stream, by reason of its condition, cannot be used by the public as a public highway for the purpose of transporting the products of the fields or forest to mills or market with profit or success; and the plaintiff avers that the said stream will not float logs as hereinbefore stated in its normal condition, and the times when said stream, by increased precipitation of water will wash logs down the channel thereof, come so unexpectedly and with such irregularity, and is so uncertain as to when the volume of water in said stream will be sufficient to wash the logs down the same, and it is so uncertain when said stream will rise to and remain at such height as to enable logs to be washed down the channel thereof, that the public cannot calculate, with tolerable or reasonable certainty as to the times or seasons the water in said stream will rise to and remain at such height as to enable it to profitably or practicably use said stream as a means of transporting logs or other products of the forest or fields to mill or market by floating them in said stream; and the plaintiff avers that said stream, for the reasons aforesaid, cannot be used by the public for the transportation of logs or timber or other products of the fields or forest to mills or market; and the plaintiff avers that by reason thereof the said stream is not a public stream, or a public highway.

For a general discussion of the subject, we shall content ourselves by referring to the former opinion in this case, from which it appears that to constitute a stream a public highway it must be of such a character as that it can be substantially useful to the public in transporting the products of the fields and forests; and we are of opinion that the facts recited, if established, plainly show that the stream in question is not capable of profitable use as a highway.

The second count follows the first in its averments as to the character of the stream, and contains also allegations of negligence in the use of the stream, in that when the logs jammed the defendant failed to break the jams in a reasonable time. This allegation the petition concedes is sufficient, if properly submitted to the jury, and of course that ends the controversy with respect to this count upon the demurrer.

With reference to the fifth count, the only ground of demurrer assigned is "that it can only be held good as to the matter of leaving down the fences, which would be negligence in removing the logs"; which is a concession that it is, to that extent, a good count upon demurrer, and the presumption, of course, is that the trial court confined the proof upon it within proper bounds.   As the defendant is bound by its assignment of grounds of demurrer, the objection to the fifth count, first presented in this court, that the suit is against joint trespassers, while this count declares against only one defendant and does not state which one, must also fall.

We are of opinion that the demurrer to the declaration was properly overruled.

The next error assigned is stated in the petition as follows: "The court committed further error in admitting opinion evidence as to certain features of the case.   It is well settled that expert evidence is not proper where the jury can form a decision from the facts without assistance.   Matters of common knowledge, which ordinary persons, without peculiar knowledge or skill, can comprehend are not subjects of expert evidence.   Furthermore, the admission of evidence as to conclusion was plainly error."

This assignment is so general as scarcely to comply with our rule upon the subject.   A number of witnesses expressed opinions upon a variety of topics, several of them as to value about which there can be no doubt that the opinion of witnesses is generally admitted; some of them as to the cost of doing certain work in order to protect the banks of the stream against

injury by the impact of logs; others as to the land which had been washed away, and the damage sustained by reason thereof.

But waiving the objection that the assignment of error is too general and singling out the most interesting and important of the objections urged upon this account, we will consider the admissibility of the evidence of Mr. Nettleton, who testified as follows:

"Q. From your experience in floating logs, state whether Jackson river is a floatable stream?

"To which question and any answer thereto the defendant by counsel objected on the ground that witness had not been shown to be an expert. Whereupon the court asked witness the following question:

"Q. Mr. Nettleton, do you regard yourself as an expert river man in the handling of lumber?

"A. I went on to Cowpasture river, and was there for three years floating logs myself, alongside as good a man as there is on earth to float logs; put in everything I had on earth in the venture.

"Q. By counsel for plaintiff: You say you are acquainted with Jackson river from the mouth of Back creek to mill of the defendant company? A. I am.

"Q. State whether or not in your opinion that stream is a floatable stream in its natural condition?

"Whereupon the defendant again objected, but the court overruled said objection and permitted the said witness to answer the same, which he did as follows:

"A. I think not.

"And to this opinion of the court in overruling defendant's objection to this testimony and admitting the same, the defendant, the Hot Springs Lumber and Manufacturing Company, Incorporated, excepted, and the bill of exception was signed, sealed and made a part of the record."

It will be observed that the objection to the testimony was not that the subject was one upon which expert testimony was

improper, but that the witness had not been shown to be an expert. This was followed by proof upon that question which satisfied the court. The qualification of a witness as an expert is one for the court, while the weight to be attached to his evidence is for the jury. It is a question addressed to the sound discretion of the trial court, which may be reviewed by this court under the limitations applicable to the review of exercise of discretion; and as the facts testified to by the witness plainly establish his expertness with respect to the matter about which he testified, we might be justified in overruling the exception upon the ground that the objection as to qualification had been removed to the satisfaction of the trial court, and that we are unable to say as a matter of law that its discretion had been improperly exercised.

But let it be conceded that the objection as taken opens up the whole subject, and that we may consider the propriety of expert testimony upon such a subject.

This subject is discussed with great discrimination and learning in the third volume of Wigmore on Evidence, chapter 65, beginning with section 1917. We regret that it is too extensive for quotation in an opinion. The conclusion of the author is, at section 1928, as fololws: "If we prefer to make the rules of evidence our tools rather than to become ourselves their helpless slaves, then we shall allow the witness to state freely all the results which he is qualified to reach, and only now and then, when he comes to matters as to which it is instantly clear that the jurors are, or can be, as fully equipped with the data, we shall exclude his inferences."

In a note to section 440, Greenleaf on Evidence (15th ed.), it is said: "Whether a non-expert is qualified to give an opinion is for the judge. A farmer is qualified to give an opinion as to the effect of constructing a railroad through the farm of his neighbor, upon the convenience and expense of carrying it on." (Citing *Tucker* v. *Mass. Cent. R. Co.,* 118 Mass. 546.) "And generally opinions, like other testimony, are competent in the

class of cases in which they are the best testimony; as where a mere description, without an opinion, would generally convey a very imperfect idea of the force, meaning, and inherent character of the things described."

In *Porter* v. *Pequonnoc Company,* 17 Conn. 249, where the plaintiff in an action for damages done his property on a water-course by the defendant's dam on the same stream above being carried away during a freshet, claimed that its being carried away resulted from its unreasonable height, and its defective materials and construction, and to prove this introduced a witness "having no peculiar skill in the mode of constructing dams, who testified that he had been acquainted with the stream in question for a great many years; that the waters in it rise very rapidly in times of freshet, and a great deal of water passes where the defendant's dam was; that said dam was built very high—higher than any dam he had ever known—keeping back a very large and deep pond of water; and that, in his opinion, under such circumstances, such a dam as the defendant's was could not stand. It was held that the facts thus stated were unexceptionable evidence; and that the opinion of the witness, in connection with such facts, was admissible."

That case involved the judgment of the witness upon a difficult problem—the strength of the dam, and the force of the water. He was well acquainted with the stream, but had no skill in the construction of dams; while in the case before us, the witness proved an intimate acquaintance with the stream, and a thorough knowledge of the uses to which it was sought to be applied.

In *Glass Co.* v. *Lovell,* 7 Cush. (Mass.) 321, Chief Justice Shaw says: "The principle upon which this evidence is admissible is clear and entirely just. In applying evidence which does not go directly to the fact in issue, but to facts from which the fact in issue is to be inferred, the jury have two duties to perform: First, . . . to ascertain the truth of the fact to which the evidence goes, and thence to infer the truth of the

fact in issue.   This inference depends on experience.   .   .   .
Now when this experience is of such a nature that it may be presumed to be within the common experience of all men of common education, moving in the ordinary walks of life, there is no room for the evidence of opinion; it is for the jury to draw the inference."

"Opinions," it is said in 7 Am. & Eng. Ency. L. at p. 493, "are never received if all the facts can be ascertained and made intelligible to the jury, or if it is such as men in general are capable of comprehending and understanding.   The ordinary affairs of life cannot be the subject of expert testimony."

In *Clifford* v. *Richardson*, 18 Vt. 620, the case is well put: "When all the pertinent facts can be sufficiently detailed and described, and when the triers are supposed to be able to form correct conclusions without the aid of opinion or judgment from others, no exception to the rule is allowed.   But   .   .   . facts are sometimes incapable of being presented with their proper force and significance to any but the observer himself.   .   .   .   Under these circumstances, the opinions of witnesses must of necessity be received."

As was said by the Supreme Court of Pennsylvania in *Graham* v. *Pennsylvania Co.,* 139 Pa. 149, 21 Atl. 151, 12 L. R. A. 293:   "In those matters where mere descriptive language is inadequate to convey to the jury the precise facts or their bearing on the issue, the description by the witness must of necessity be allowed to be supplemented by his opinion, in order to put the jury in position to make the final decision of the fact."

In *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 19 Am. Rep. 401, the court said:   "The exception to the general rule that witnesses cannot give opinions, is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill, or learning, but includes the evidence of common observers, testifying to the result of their observation, made at the time, in regard to common appearances or facts, and a condition

of things which cannot be reproduced and made palpable to a jury. Such evidence has been said to be competent from neces- sity, on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper adminis- tration of justice."

*Per contra,* it has been held in numerous cases, and as to subjects about which the jury are supposed to have the same degree of knowledge as the witness. Opinion evidence is ex- cluded as to the sufficiency of a fence to turn cattle, and like subjects within the range of everyday experience. *Southern Railway Co.* v. *Mauzy,* 98 Va. 692, 37 S. E. 285.

Can it be doubted that the opinion of a witness who had made the floating of logs down mountain streams a part of the busi- ness of his life, who professed and, as far as the question under consideration is concerned, possessed intimate knowledge of the stream with reference to which he testified, before a jury com- posed of farmers and mechanics and men in the various avoca- tions of life, of ordinary experience and of average intelligence, would be of distinct value in enabling them to arrive at a cor- rect conclusion? He might testify with respect to the stream, its volume of water, the height of its banks, the rapidity of its current, its tortuous course, the frequency of high water, the length of time which it was likely to continue; but unless he pos- sessed unusual powers of description he could not present to the mind of the average juror a picture of Jackson river as it ex- isted in his mind—could not convey to them, by a statement of facts, however exact, without the aid of his opinion, a cor- rect and intelligent appreciation of the stream, so as to enable them to decide the complex proposition: first, as to the power of the stream to float logs at all; and, second, as to whether or not it could be made so subservient and useful to the public for the transportation of products as to constitute a public high- way and not a private stream.

We are of opinion that the evidence was properly admitted.

The remaining assignments of error all pertain to the correct-

ness of the instructions given, and to the judgment of the court upon the motion to set aside the verdict as contrary to the evidence. To the determination of these questions it is of course necessary that the evidence presented to the court below should be before us by proper bill of exceptions.

The case was tried and a verdict rendered on the 28th day of November, 1907. Upon the rendition of the verdict the defendant moved the court to set it aside upon numerous grounds, which need not be more specifically stated than that, except those already disposed of, they all depend upon the evidence.

Upon this motion the following order was entered: "The court not being advised of its judgment on motion to set aside the verdict doth take time to consider, and the following consent of parties is entered of record, to-wit: It is agreed that the plaintiff and defendant may present to the judge of this court such bills of exceptions to the rulings of the court during this trial as either party may desire within sixty days from the 28th day of November, 1907, to be signed, sealed and made a part of the record with the same force and effect as if the said bills of exceptions were presented to the court and signed during the present term, November, 1907, and this consent is to be entered of record." Which was accordingly done.

It will be observed that no judgment was rendered upon the verdict. The whole matter was, therefore, still within the breast of the court with full power, regardless of the consent of parties, to sign such bills of exceptions and enter such judgment as might be proper.

At the March term of court, on the 20th day of the month, the following order was entered: "This day came again the parties by their attorneys, and the court having maturely considered the motion of the defendant made at the last term of this court, to set aside the verdict of the jury and grant a new trial for reasons fully set out in the order made in this case at the last term, is of opinion and doth decide that there is no legal ground upon which to set aside said verdict, doth over-

rule said motion. It is therefore considered by the court that the plaintiff, H. A. Revercomb, recover from the defendant, Hot Springs Lumber and Manufacturing Company, Incorporated, the sum of $1,650"; and the judgment was suspended for ninety days.

There next appears the following memorandum: "Be it remembered that during the progress of this cause, and during the time allowed by law and by consent of parties entered of record as above, the defendant, the Hot Springs Lumber and Manufacturing Company, Incorporated, tendered its several bills of exceptions numbered respectively 1, A, B, C, D, E, F, G, H, M, 2, which were, by the judge of this court, signed, sealed and made a part of the record, and which bills of exceptions are in the words and figures following, to-wit:"

These exceptions, down to No. 2, refer to the admission of testimony, and have already been considered. The object of the second bill of exceptions was to make a record of the evidence before the jury, and the trouble with respect to it is, that the transcript of the evidence is not properly identified by the court.

As was said in *Blackwood Coal & Coke Co.* v. *James' Admr.*, 107 Va. 655, 60 S. E. 90: "The evidence inserted must be, in some way, identified or earmarked by the judge under his own hand. Otherwise it is no part of the bill and cannot be considered by an appellate court. The making of a bill of exception is a judicial act, and cannot be delegated."

In that case and in *Battershall* v. *Roberts,* 107 Va. 269, 58 S. E. 588, the views of this court are fully stated, and are conclusive of this case, unless the order entered by the court on the 20th of July, 1908, serves to remove the difficulty.

The plaintiff in error served notice upon the defendant in error that on that day it would move the circuit court "to enter an order *nunc pro tunc* in said cause certifying the true evidence introduced in said cause . ." In pursuance of that notice the parties appeared upon the day named, and over the

objection of the defendant in error the circuit court entered an order certifying the evidence *nunc pro tunc.* Defendant in error filed its bill of exception to this action upon the part of the court.

We are of opinion that an exception was unnecessary, because the want of power in the court to enter such an order appears upon the face of the record.

The contention of plaintiff in error upon this point is that the courts have possessed and exercised the power to make *nunc pro tunc* entries in proper cases from the earliest times, wherever it was necessary to prevent injustice to suitors; that it may be done where a court has ordered a judgment, which the clerk has failed or neglected to enter in the record, even after the term at which it was rendered has passed. Citing 4 Am. St. Rep. 828, and Freeman on Judgments, sec. 56.

The trouble is that this argument, if sound, proves too much, and the contention, if sustained, would practically abrogate the statute upon the subject of bills of exception.

In *Wallahan* v. *People,* 40 Ill. 104, it is said: "An amendment of a bill of exceptions incorporating evidence alleged to have been omitted from the original bill of exceptions should not be allowed at a term subsequent to that at which the trial was had, unless there is something in the record to amend by."

Now in the case before us, there was nothing in the record by which an amendment could be made—no note or memorandum of evidence introduced; for to say that there was a memorandum of the evidence introduced would be to assume the existence of the very fact which is to be established—that is to say, that there is a memorandum which correctly states the evidence introduced before the jury.

In *Tracy's Admx.* v. *Carver Coal Co.,* 57 W. Va. 587, 50 S. E. 825, it was held that where a skeleton bill of exceptions had been prepared, as in our case, the judge of the court, on motion of the exceptor, could not, two years afterwards, undertake to certify the evidence and complete a bill of exceptions,

which, under the law, must be completed within 30 days after the adjournment of the court at which the final judgment was rendered. "To permit this to be done," says the court, "is to permit the judge to certify the evidence which the law requires to be certified within 30 days after the adjournment of court. The evidence which appears in the original record, as before referred to, contains no mark or memorandum by which it could be copied into the skeleton bill, and therefore was not, and could not, be considered a part thereof." Further on the opinion says: "The judge has a duty to perform in certifying the evidence, and, in order to perform this duty under the statute, he must have the transcript of evidence before him, and under his personal supervision and inspection. It will not do to prepare a skeleton bill, with parenthetical instruction to 'here insert the transcript of the evidence, when transcribed and certified by the stenographer,' but the evidence must have been actually transcribed, and be before the judge for his personal supervision, in order to make such a certificate as is required by the statute."

There was no clerical misprision here, no failure upon the part of the clerk in the discharge of his duty; but the trouble arises out of the fact that, by some oversight, which may happen to the most cautious and discreet, there was no identification of the evidence, the doing of which is not a clerical but a judicial duty.

We are of opinion that the evidence is not properly before us, and we are precluded from a consideration of the instructions and the judgment refusing to set aside the verdict as contrary to the evidence.

Upon the whole case, we are of opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*