𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

CHESAPEAKE AND OHIO RAILWAY CO. V. MATHEWS.

November 21, 1912.

1.  EVIDENCE—*Opinions—Admissibility.*—Opinions of witnesses concerning matters of daily occurrence and open to common observation are received from necessity. The ground upon which they are admitted is that, from the very nature of the subject in issue, it cannot be stated or described in such language as will enable persons not eye-witnesses to form an accurate judgment in regard to it. Thus, in the case at bar, when the witness said she was "careful" in walking, she was not stating a legal conclusion, but describing what she did in the only way in which she could convey the character of her act to the jury. So, when the witness said there was no permanent light near enough to light up the platform, he was simply describing to the jury the inefficiency of the lights in the only practical way open to him.

2.  EVIDENCE—*Opinions—Admissibility.*—In an action to recover damages resulting from stepping into a hole in a platform, the statement of a witness that he put a board over the hole "so that there wouldn't be any danger of anybody getting hurt" is not objectionable as opinion evidence. If he had omitted the words quoted, everybody who heard the first part of his statement would have inferred them.

3.  NEGLIGENCE—*Proximate Cause—Contributory Negligence.*—In an action to recover for a negligent injury, it is proper to instruct the jury that they must find for the plaintiff, if they believe from the evidence that the defendant was guilty of negligence, as charged in either count of the declaration, and that such negligence of the defendant was the sole proximate cause of the plaintiff's injuries. A verbal addition stating: "There must not have been any concurring negligence of plaintiff and defendant which occasioned the injury" certainly could not have been prejudicial to the defendant.

4.  INSTRUCTIONS—*Questions of Law—Case at Bar.*—In an action to recover damages resulting from stepping into a hole in the station platform of a railway company, where there is a diver-

sity among the witnesses as to the size and character of the hole, it is not error to instruct the jury that while the defendant is not liable for injuries suffered through slight obstructions, worn places, burnt places and depressions, yet they are to determine from the evidence whether or not such defects and imperfections are slight or serious. This does not submit to the jury the determination of a question of law—whether or not the depression was such as to render the platform not in a reasonably safe condition. The instruction referred to the physical characteristics of the defects and imperfections as disclosed by the evidence.

5. CARRIERS—*Station Platforms—Walkways—Persons Accompanying Passengers.*—It is the duty of a railroad company to provide reasonably safe approaches and walkways for the use of its passengers and those who accompany them to and from the stations.

Error to a judgment of the Circuit Court of Augusta county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*R. L. Parrish* and *J. M. Perry,* for the plaintiff in error.

*A. L. Hughson* and *Charles and Duncan Curry,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Mrs. Mathews accompanied a friend, who was to take passage on a train of the Chesapeake and Ohio Railroad, to the station, and her companion having boarded the train Mrs. Mathews walked from the railroad station along the platform and attempted to cross the railroad track at a passageway. She claims that, the night being dark and no sufficient light being provided, her left foot

went into a hole in the crossing and caused her to fall, and her foot and ankle were very seriously injured. For these injuries she brought suit, and recovered a verdict and judgment for $2,500. During the trial exceptions were taken to the rulings of the court, and the case is before us upon a writ of error awarded to the railroad company.

It is assigned as error that the plaintiff in her own behalf was permitted to testify that her conduct in crossing the track was "careful;" that one of plaintiff's witnesses was asked this question: "Was there any permanent light near enough to this walkway to light it up?" to which he replied: "There was not; the nearest light was up there at the other crossing;" and that the court permitted one of defendant's witnesses, upon cross-examination by plaintiff's counsel, to answer the following question: "You, as I understand, put that board over that hole so that there wouldn't be any danger of anybody getting hurt by it; that is what you put it over for?" The error assigned with respect to those rulings is that it was for the jury to say whether or not the plaintiff was careful, and whether or not the light was sufficient. In other words, they present the constantly recurring objections to what is called "opinion" evidence.

The general subject was considered in *Hot Springs Co.* v. *Revercomb,* 110 Va. 240, 65 S. E. 557, and we refer to the opinion in that case and to the authorities there cited.

In *Hardy* v. *Merrill,* 56 N. H. 241, 22 Am. Rep. 441, Chief Justice Foster says: "Opinions concerning matters of daily occurrence, and open to common observation, are received from necessity; and any rule which excludes testimony of such a character, and fails to recognize and submit to that necessity, tends to the suppression of truth and the denial of justice. The ground upon which opinions are admitted in such cases is that, from the very nature of the subject in issue, it cannot be stated or de-

scribed in such language as will enable persons, not eye-witnesses, to form an accurate judgment in regard to it. How can a witness describe the weight of a horse? or his strength? or his value?  Will any description of the wrinkles of the face, the color of the hair, the tones of the voice, or the elasticity of step, convey to a jury any very accurate impression as to the age of the person described? And so, also, in the investigation of mental and psycho-logical conditions—because it is impossible to convey to the mind of another any adequate conception of the truth by a recital of visible and tangible appearances—because you cannot, from the nature of the case, describe emotions, sentiments, and affections, which are really too plain to admit of concealment, but, at the same time, incapable of description—the opinion of the observer is admissible from the necessity of the case; and witnesses are per-mitted to say of a person, 'He seemed to be frightened;' 'he was greatly excited;' 'he was much confused;' 'he was agitated;' 'he was pleased;' 'he was angry.' ".

In Greenleaf on Evidence (15th ed.), sec. 440, note, it is said: "Generally, opinions, like other testimony, are competent in the class of cases in which they are the best testimony; as where a mere description, without an opin-ion, would generally convey a very imperfect idea of the force, meaning, and inherent character of the things de-scribed."

We need not go beyond the limits of this case for an illustration.  How could the witness have communicated to the minds of the jury the precise degree of efficiency of the lights in use at the crossing in question?  He could state their position, their distance from the crossing, and could, perhaps, have measured their intensity with re-spect to their candle-power, and yet have given the jury but little aid in reaching a right conclusion as to whether or not the lights were sufficient to accomplish the purpose.

for which they were designed—that is, to afford a reasonable light for those who were to cross the railroad track at a particular point.

With reference to the testimony of the defendant in error that she was "careful," we do not think this offends against the rule as to opinion evidence. When the witness speaks of her conduct as being "careful," she is not stating a legal conclusion, but is describing what she did —as though she had said, "I was walking rapidly," or "slowly." She means that she was cautious, circumspect. Her answer to the question was, "I didn't go across very often, but I was always very careful, and had gotten behind the rest because I was careful, and they had gone on and gotten ahead, because they were familiar and went across, and I was careful for fear I might fall, and got across the rail, and didn't know there was anything, couldn't see, but could see the glint of the rail distinctly, and stepped over that and went on, then my foot went down and I fell." She is stating a mental process which found expression in her conduct. But apart from all of this we think it would be too nice and severe an application of the rule against opinion evidence to hold this to be reversible error.

With respect to the statement of the witness, that he put a board over the hole so that there wouldn't be any danger of anybody getting hurt by it, there is no merit in the objection. If he had stopped after stating the fact that he put the board over the hole, everybody who heard his testimnoy would have inferred, without his stating it, that the act was done in order to obviate the danger of injury to some person using the pass-way.

The court in its first instruction told the jury that "if they believe from the evidence in this case that the defendant company was guilty of negligence, as charged in either count of the declaration in this case, and that

12

such negligence of the said defendant company was the sole proximate cause of the plaintiff's injuries, then they ought to find a verdict for the plaintiff."

This instruction we think is free from error.

The court, of its own motion, afterwards instructed the jury, that in telling them in instruction No. 1 that they should find for the plaintiff if they believed that the de-. fendant's negligence was the sole proximate cause of the injury, "the court intends to tell you that the injury must be directly due to the negligence of the defendant alone, and not partly to the negligence of the plaintiff—that is to say, there must not have been concurring negligence of plaintiff and defendant which occasioned  the injury." This instruction was proper, and certainly not to the prejudice of plaintiff in error.

The court also, of its own motion, told the jury that "although they are elsewhere instructed that the defendant is not responsible for injuries suffered through slight obstructions, worn places, burnt places and depressions, yet they are to determine from the evidence whether or not such defects and imperfections are slight or serious unless otherwise directed."   This is objected to upon the ground that it left to the jury the determination of a question of law—whether or not the depression was such as to render the crossing not in a reasonably safe condition.   For this position plaintiff in error relies upon *Richmond* v. *Lambert,* 111 Va. 174, 68 S. E. 276.

In that case, which was an action for an injury sustained by reason of an alleged defect in one of the sidewalks of the city of Richmond, it is said: "It is sufficient if the streets are in a reasonably safe condition for travel, in the ordinary modes, with ordinary care, by day or night. Whether or not they are in such condition is to be determined by the circumstances of the particular case.   If the evidence is clear and without conflict as to the nature, size, character and use of a step which encroaches upon a sidewalk,

then it becomes a question of law to be decided by the court whether or not it is such an obstruction as to render the city liable for an injury resulting therefrom."

But this case is altogether different.    Here the nature, size and character of the hole in the crossing is varyingly stated by the witnesses.    It was for the jury to say from the evidence before them what was the nature, size and character of the hole which caused the injury, and in telling the jury it was for them to determine from the evidence whether the defects or imperfections were slight or serious, the instruction referred to their physical characteristics as disclosed by the evidence.    If the imperfections were shown by the evidence to be slight and trifling, then the defendant had not been guilty of the want of ordinary care in failing to provide a reasonably safe passageway across its tracks for those going to or from its trains.    If the defect was more serious—that is, if the hole were broader, deeper or more dangerous in the opinion of the jury—then there would have been a breach of duty upon the part of the railroad company for which it would be responsible in damages.

This brings us to a consideration of the motion to set aside the verdict as contrary to the evidence.    As we have said, there is diversity among the witnesses with respect to the size and character of this hole.    One of the witnesses for the defendant in error, after having testified that the walkway was laid with pieces of timber about six inches by two and one-half inches, so as to make a walkway up level with the tracks, with space of about an inch between the planks, that it was very much traveled, and that there was a constant stream of passengers in train time, testifying as to the condition of the walkway at the time of the accident, says: "There was a hole between two of these pieces, evidently burnt out at first, when it first came, and the cinders were under there; it had evidently been worn, too.    Engines take water there, stand over that and fire

had got out of the box and dropped down on two of these planks and there was a space about that long (indicating) burnt about three inches wide and a little pile of cinders had got down through. The space, I suppose, was larger than that (indicating) ; kind of round place at the end of that burnt through. There was a crack there before, but it just widened it out and made a hole there about as big as my head; something like that, say from five to seven inches; something like that across." Being asked what was the condition of the hole when he saw it the next morning, he answered : "Just a hole burnt through there; at least, the planks burnt through so it made a hole through down to the ties below." Q. "Then the hole was clear through the plank?" A. "Yes, sir."

The passway was even with the top of the rails, a space being left between the rail and the timbers in which the flanges of the wheels upon the engines and cars moved. The hole, therefore, going down to the ties, must have been from four to five inches in depth. If the jury believed the witnesses for the plaintiff, as they very properly may have done, then we have a hole from five to seven inches wide and from four to five inches deep, and we cannot say that such a defect was so slight as not to constitute actionable negligence upon the part of the plaintiff in error. The railroad company knew, or should have known, of the existence of this defect. It was in a public and much used place; it had existed for two weeks, or perhaps longer; and that it was the duty of the railroad company to provide reasonably safe approaches and walkways for the use of its passengers and those who accompany them to and from its stations is too well established to need authority in its support, and is, indeed, not disputed in this case.

Upon the whole case, we are of opinion that there is no error in the judgment of the circuit court, which is affirmed.

*Affirmed.*